IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANKLIN C. EDMONDS,

                                                          OPINION and ORDER

                Plaintiff,

                                                          08-cv-567-bbc

     v.

OPERATING ENGINEERS LOCAL 139,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for monetary relief under Title VII of the Civil Rights Act of 1964, in which plaintiff Franklin Edmonds, who is proceeding pro se, alleges that he has been discriminated against by his union, defendant Operating Engineers Local 139. Defendant has filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On January 7, 2009, this court granted defendant's motion to present documents outside the pleadings without converting the motion to dismiss into a motion for summary judgment. These documents are docket sheets and filings in previous cases filed in this court and the District Court for the Eastern District of Wisconsin in which plaintiff sued defendant. From the facts contained in plaintiff's complaint as well as the documents submitted by defendant outside of the pleadings, I conclude that plaintiff's complaint must be dismissed under the doctrine of claim preclusion.

1

Before discussing the motion to dismiss I will address several preliminary motions filed by the parties. First, defendant has filed a motion to strike from the docket a copy of a January 1, 2009 letter plaintiff sent to defendant. The letter, dkt. #11, was sent by plaintiff to the court and docketed even though it did not bear a case number and is not a motion or some other paper related to the case at hand. Because it appears that the letter was docketed inadvertently, I will grant defendant's motion to strike it from the docket.

Next, plaintiff has filed motions to present documents outside the complaint and to strike the copy of the consent decree defendant attached to its brief because it is "incomplete," and replace it with a copy he includes with his motion to present documents outside the complaint. Plaintiff seeks to have more than 30 other documents considered with the motion to dismiss. These documents range from court documents in plaintiff's earlier Eastern District of Wisconsin cases to pages of plaintiff's diary. I will deny these motions as moot. Even if I considered plaintiff's documents and replaced defendant's version of the consent decree with plaintiff's, nothing in those documents would affect the claim preclusion analysis.

Also, plaintiff has filed a motion to allow him to hand-number the documents he neglected to label when he submitted them to the court in support of his motion to present documents outside the complaint but neglected to label. That motion will be denied because the index plaintiff provided with his documents is adequate for the court to identify each document.

2

Finally, defendant has filed a motion to strike plaintiff's late response to its motion to dismiss. Plaintiff submitted his brief in opposition to defendant's motion to dismiss nine days after the deadline given by this court. This delay did not prejudice defendant, as it was allowed to file a reply brief 11 days following the filing of defendant's brief in opposition. Therefore, I will deny defendant's motion to strike.

Turning to defendant's motion to dismiss, I draw the following facts from plaintiff's complaint as well as public records I permitted defendant to submit from outside the record.

## FACTS

### A. Current Case

Plaintiff Franklin Edmonds is a member of defendant Operating Engineers Local 139. Plaintiff was involved in previous Title VII litigation against defendant, which culminated in a consent decree under which the parties operated. On April 11, 2006, defendant's dispatcher called plaintiff with a job referral operating a rubber tire loader for Rawson Contractors, Inc. The dispatcher told plaintiff to call a Rawson's superintendent, go to Rawson to fill out paperwork, take a drug screening test and begin work. Plaintiff called the superintendent, who gave him poor directions to Rawson. By the time plaintiff arrived, the superintendent had left. Plaintiff was given an application and the superintendent's business card and told to call the superintendent later that day.

After plaintiff left Rawson's office, he called defendant's dispatcher and explained the

3

situation to her. She told him she would call the Rawson superintendent. The dispatcher called plaintiff back later and told him she could not reach the superintendent and that Rawson knew it had to pay plaintiff for two hours for showing up to complete the paperwork.

Plaintiff called Carin Clauss, the court-appointed monitor for the consent decree issued entered in previous litigation, complaining about the Rawson referral. She said she would investigate the complaint, but never did. Instead, she had defendant investigate the complaint. Clauss instructed defendant not to make any referrals on the Rawson job until plaintiff's complaint was resolved.

On April 14, 2006, Guy Yuker, one of defendant's business agents, called plaintiff. Plaintiff asked Yuker for his phone number but he said he does not give anyone his number. Plaintiff asked him for a business card, and Yuker hung up. Plaintiff stopped receiving any job referrals.

On approximately April 17, 2006, plaintiff called Clauss and told her he was being denied job referrals as well as pay for his time filling out the Rawson application.

On April 18, 2006, defendant's dispatcher called plaintiff, telling him that Rawson might have work for him on Thursday of that week. He asked her about the two hours of pay Rawson owed him, and about his place on the out of work list for all the pieces of equipment he operates. The dispatcher said she would check on that. She called him back shortly thereafter and said Rawson would not be hiring him for work on that Thursday.

4

On April 20, 2006, Yuker and another business agent for defendant, Tim Goetz, called plaintiff and asked him "what the hell was going on with this Rawson's job?" Plaintiff responded, "You tell me," but indicated also that he had received the two hours of pay for showing up to complete the paperwork. Yuker said that he sent Goetz to investigate the Rawson job and there was no job available. Plaintiff told Yuker, "Some people get other people into things that they are not aware of, and that is what has happened to you." He also told Yuker he had not received a referral since April 11, 2006. They asked why this was the case. Plaintiff told Yuker he needed to speak with the dispatcher and Clauss about it.

On April 21, 2006, plaintiff called defendant's "District A" business manager, Terry McGowan, and spoke with him about being denied job referrals and his place on the out of work list for the pieces of equipment he operates and told McGowan that Clauss was aware of these problems. McGowan said that this was the first time he had heard of the problems and that he would look into the situation.

On April 23, 2009, plaintiff wrote McGowan concerning their phone conversation. On April 24, 2006, plaintiff received a job referral for Hoffman Construction, Inc., in Viroqua, Wisconsin. Plaintiff turned down the job because it was too far away from where he lived.

Also on April 24, 2006, Goetz discovered that Rawson hired two men to operate rubber tire loaders on the project to which plaintiff had been referred. Both men were also members of defendant. One was a regular employee of Rawson, and the other had worked

5

for Rawson the previous year and was recalled by Rawson. Both operators are white.

On April 25, 2006, plaintiff received a referral for Wisconsin Power Constructors to operate a backhoe. Plaintiff accepted the referral. The job was supposed to last the rest of the construction season. Plaintiff reported to work and was assigned to a backhoe by a foreman who is a member of the defendant union. However, plaintiff knew his assigned work would not last the rest of the construction season.

On May 9, 2006, defendant filed a grievance on plaintiff's behalf against Rawson for breaching the applicable collective bargaining agreement. Defendant requested payroll records and time cards from the project to determine the extent of Rawson's conduct in violation of the agreement. Neither defendant nor Clauss enforced this request.

On May 11, 2006, Yuker came to plaintiff with a settlement agreement and check for about $450. Plaintiff refused to sign the settlement agreement because it was "nowhere near" the amount he desired for a settlement. The next day, plaintiff was laid off from his job with Wisconsin Power Constructors.

On May 16, 2006, plaintiff received a letter from Yuker, stating that the collective bargaining agreement permitted Rawson to refuse to hire someone defendant refers to a job. Plaintiff never received a document from Rawson stating it was rejecting him for employment. On May 18, 2006, plaintiff wrote to Yuker, stating he was being denied job referrals and that he had been laid off from his job with Wisconsin Power Constructors, which was supposed to last the rest of the construction season, because he refused to sign the

settlement agreement.

On May 23, 2006, plaintiff received a letter from Clauss, suggesting that plaintiff accept the settlement agreement. On June 22, 2006, plaintiff received a letter from defendant stating that the union believed the settlement agreement was fair and that it was withdrawing the grievance against Rawson.

### B. Previous Litigation

On August 12, 1997, a group of plaintiffs, including plaintiff Edmonds, filed a class action in the Eastern District of Wisconsin, case no. 97-cv-857, alleging that defendant had violated Title VII by, among other things, engaging in the manipulation of its job referral book. They contended that this manipulation resulted in discrimination against women, African-Americans, Hispanics and Native Americans. In an order dated June 28, 2002, the court approved a consent decree and dismissed the case. The consent decree was to remain in effect for four years. The decree created job referral processes and established a court-appointed monitor to oversee the implementation of the terms of the decree. If at any time during that four-year period a class member thought that the decree had been violated, that class member could file for relief with the court. The parties selected Carin Clauss as the monitor.

Plaintiff filed a complaint in the Eastern District of Wisconsin on May 16, 2006, opened as case no. 06-cv-592, alleging that defendant violated the consent decree by

7

continuing to manipulate its job referral book to his exclusion. Among other claims against Clauss, plaintiff alleged that she was not monitoring defendant adequately and violating her duties as consent decree monitor. Plaintiff's complaint was short on specifics but did briefly discuss the Rawson and Wisconsin Power Constructors jobs. The court construed the complaint as a motion in case no. 97-cv-857 to reopen and enforce the consent decree. Also, the court directed Clauss to submit a report in support of her contention that she had complied with her duties as the consent decree monitor.

On September 1, 2006, the court held a hearing on plaintiff's motion. The court accepted Clauss's report, which included a discussion of why Clauss believed there was no merit to plaintiff's claim that defendant had acted in concert with Rawson to deny him a job there. In her report, she stated that she thought defendant's dispatcher was led to believe that plaintiff would be given that job, that defendant initiated an investigation after it found out that work was being done at the job site and that it negotiated a settlement of plaintiff's grievance. Finally, her report stated "although Mr. Edmonds declined the settlement, I do not find that the Union was in any way culpable in the initial referral or that it acted in any but the most vigorous way to preserve and protect Mr. Edmonds' rights." The court ordered plaintiff to submit by October 2, 2006, a more definite written statement of alleged current violations of the consent decree and to identify with particularity the evidence supporting his claims. Plaintiff submitted his response on September 28, 2006. The response focused on allegations that Clauss had violated the consent decree in various ways in the years 2003-

05; plaintiff did not discuss the Rawson and Wisconsin Power Constructors jobs. The court received replies from defendant and Clauss.

The court held a hearing on plaintiff's motion on November 13, 2006. Clauss reported that she believed defendant had substantially complied with the consent decree, and she recommended that the decree should expire. The court found that plaintiff had failed to produce evidence of violations with the requisite specificity. It asked defendant whether it would agree to extend the consent decree for the limited purpose of giving class members a final opportunity to contact Clauss regarding complaints about the operation of the referral system over the last 60-90 days. Defendant agreed.

On January 9, 2007, Clauss submitted an addendum to her final report that addressed the final notice mailed out to class members by defendant. In the addendum, Clauss stated that she "continue[s] to believe that there is no evidence that the Union has not fully complied with the terms of the Consent Decree," and again recommended that the decree be allowed to expire.

On March 22, 2007, plaintiff filed a motion for removal of Clauss as the court-appointed monitor. On March 30, 2007, the court issued an order denying plaintiff's motions to enforce the consent decree and to remove Clauss. The court stated:

> As stated at the hearing held on November 13, 2006, the court found that Edmonds failed to meet his burden of proving with specific evidence that defendant violated the consent decree. Since that finding, the court has given Edmonds numerous opportunities to provide the court with particular evidence of violations by the defendant. Edmonds, however, has failed to do

9

> so and his motions and responses still contain only blanket allegations of violations, none of which go to the heart of the defendants' duties under the consent decree. Nor has Edmonds provided the court with any evidence that the monitor has failed to adequately monitor the defendant. Because the court can find no substantive violation of the consent decree by the defendant, or credible evidence that the monitor materially breached her duties under the consent decree, it will deny Edmonds' motion to enforce the consent decree.

Further, the court ordered that the consent decree was expired and closed the case.

OPINION

Under Fed. R. Civ. P. 12(b)(6), a claim or entire complaint may be dismissed for failure to state a claim upon which relief can be granted. Although a plaintiff need satisfy only a liberal notice pleading standard, Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988), its claim will be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007). In making this determination in this case, the court must construe the complaint liberally because plaintiff is litigating this action pro se. Haines v. Kerner, 404 U.S. 519, 521 (1972).

In his complaint, plaintiff does not list specific claims and frequently discusses allegations again non-parties, such as the court appointed monitor. However, he appears to be bringing Title VII claims that defendant discriminated against him (1) with respect to the Rawson job when it acted in concert with that employer to deny him the job and then breached its duty to represent plaintiff regarding his grievance; (2) with respect to the

10

Wisconsin Power Constructors job by conspiring with that employer to terminate him from the job in retaliation for refusing to sign a settlement agreement regarding the Rawson referral; and (3) by generally failing to give him referrals in April and May 2006.

Defendant makes several arguments in support of its motion for dismissal of plaintiff's complaint. I need not consider every one because I conclude plaintiff's complaint is barred by the doctrine of claim preclusion.

Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980). In general, "[t]he doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." Perkins v. Board of Trustees of the University of Illinois, 116 F.3d 235, 236 (7th Cir. 1997). The three requirements of claim preclusion under federal law are (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7th Cir. 2002). When these elements are satisfied, the judgment in the earlier suit bars further litigation of issues that were either raised or could have been raised therein. Kratville v. Runyon, 90 F.3d 195, 197-98 (7th Cir. 1996).

I conclude that all three elements of claim preclusion are met in this case. First, as to an identity of parties, there is no dispute that plaintiff sued defendant in each of the

11

previous cases. The other two elements require further discussion.

An identity of causes of action exists when both the prior and subsequent claims arise out of the same transaction, defined for res judicata purposes as "a single core of operative facts giving rise to a remedy." Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593 (7th Cir. 1986). "[T]wo claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." Herrmann v. Cencom Cable Assoc., Inc., 999 F.2d 223, 226 (7th Cir. 1993) (citations omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." Okoro v. Bohman, 164 F.3d 1059, 1062 (7th Cir. 1999).

I conclude there is an identity of causes of action between plaintiff's current claims and claims he raised in case no. 97-cv-857. In plaintiff's motion to reopen case no. 97-cv-857, he alleged that court-appointed monitor Clauss allowed defendant to violate parts of the consent decree, resulting generally in the referrals being manipulated. Also, plaintiff's motion stated the following about the Rawson and Wisconsin Power Constructors jobs:

> [Clauss] has deny me information of a job referral that she did not monitor that the Union referred me to that turn out to be for me to drive all the way from Madison to Milwaukee to put in an application with Rawson Cons. Co. When I reported to her that the Union was denying me job referrals she did nothing about it. And I heard nothing from her concerning this complaint. After contacting Terry McGowan received a job referral which she did not monitor. I excepted the job it was suppose to be from 4/06 to 12/06. I work about 13 days and was laid off.

12

Although plaintiff fleshes out his claims regarding the Rawson and Wisconsin Power Constructors jobs more thoroughly in his present complaint, it is clear that he bases his claims in each case on alleged discriminatory conduct by defendant with regard to those two jobs as well as a general lack of referrals in April and May 2006. Because his current claims regarding the Rawson job, the Wisconsin Power Constructors job and the general lack of referrals involve the same incidents or "factual nebulas" addressed in Eastern District of Wisconsin case no. 97-cv-857, there is an identity of causes of action as to plaintiff's current claims.

Finally, defendant argues that when the Eastern District of Wisconsin court denied plaintiff's motion to reopen and enforce the consent decree in case no. 97-cv-857 and ordered the consent decree terminated, its order was a final judgment on the merits on plaintiff's claims. Generally, an order constitutes a final decision if it ends the litigation and leaves nothing to be decided in the district court. Adams v. Lever Bros. Co., 874 F.2d 393, 394 (7th Cir. 1989). "The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . [t]he test is whether the district court has finished with the case." Hill v. Potter, 352 F.3d 1142, 1144 (7th Cir. 2003).

The procedural circumstances of case no. 97-cv-857 are unusual with regard to claim preclusion. It is common to see claim preclusion issues raised in situations in which a plaintiff brings an action and the parties disagree whether a claim was dismissed with or

13

without prejudice in an earlier case.  Here, the order in an earlier case was not an order of dismissal; plaintiff originally brought his claims in a new complaint in case no. 06-cv-592, but his claims were converted into a motion to reopen and enforce the consent decree in case no. 97-cv-857.  The court's March 30, 2007 order denied plaintiff's motion to reopen the case and enforce the consent decree and ordered the consent decree expired.

      Regardless of these unusual procedural circumstances, it is clear that the March 30, 2007 order was a final judgment on the merits.  Certainly it indicated that the litigation was ended; the record in case no. 97-cv-857 shows that the court went through numerous rounds of briefing and hearings in order to identify all outstanding complaints that the class members, including plaintiff, had with the consent decree before finally ordering the decree expired.  In particular, the court gave plaintiff multiple opportunities to flesh out his claims before concluding that he had failed to present "particular evidence of violations by the defendant" and denying his motion.  There is no reason that the March 30, 2007 order should be treated differently from other orders that would normally be considered final judgments on the merits, such as an order dismissing a plaintiff's complaint with prejudice following numerous attempts by the plaintiff to adequately state a claim.  To hold otherwise would render an absurd result, whereby plaintiff would have been able to bring his claims under case no. 97-cv-857, receive an adverse ruling, yet be able to bring the same claims in the current case and receive another bite at the apple.  Because defendant has shown that the three requirements of claim preclusion, identity of parties, identity of claims and a final

14

judgment on the merits, are met as to plaintiff's claims in this case, I will grant defendant's motion to dismiss plaintiff's complaint.

ORDER

IT IS ORDERED that:

1. Defendant Operating Engineers Local 139's motion to dismiss plaintiff Franklin Edmonds's complaint, dkt. #7, is GRANTED. This case is DISMISSED because it is barred under the doctrine of claim preclusion.

2. Defendant's motion to strike from the docket a copy of a January 1, 2009 letter plaintiff sent to defendant, dkt. #18, is GRANTED. The clerk of court is directed to strike the letter, dkt. #11, from the docket.

3. Plaintiff's motions to present documents outside the complaint and to strike the copy of the consent decree placed in the record by defendant, dkt. ##13, 15, are DENIED as moot.

4. Plaintiff's motion to allow him to hand-number the documents he previously submitted to the court in support of his motion to present documents outside the complaint, dkt. #22, is DENIED.

5. Defendant's motion to strike plaintiff's late response to its motion to dismiss, dkt. #14, is DENIED.

6. The clerk of court is directed to close this case.

Entered this 1st day of June, 2009.

         BY THE COURT:

         /s/

         _____
         BARBARA B. CRABB
         District Judge